IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ELIZABETH CIRVES,

                Plaintiff,

v.                                              OPINION and ORDER

SALAM SYED, LAURA SUKOWATY,                       19-cv-725-jdp
and SERGEANT LURQUIN,

                Defendants.

---

Pro se plaintiff Elizabeth Cirves contends that staff at the Dane County jail violated her rights by refusing to provide her with clonazepam to treat her ear condition and by failing to treat her subsequent withdrawal symptoms. All parties have moved for summary judgment. Dkt. 57 (Cirves's motion); Dkt. 68 (defendant Lurquin's motion); Dkt. 77 (defendants Sukowaty and Syed's motion). Cirves has since filed a motion "closing interest of Sgt. Lurquin from her lawsuit" because she ran out of time to respond to Lurquin's summary judgment motion. Dkt. 98. I will construe her motion as a request to amend her complaint under Federal Rule of Civil Procedure 15 to dismiss her claims against Lurquin, which I will grant.

As for Cirves's claims against Sukowaty and Syed, the question of whether they acted objectively reasonably in treating Cirves's health problems cannot be resolved at summary judgment. There are genuine disputes of material fact about what defendants knew about Cirves's symptoms and the efforts they took to treat her condition. I will deny both sides' motions for summary judgment on these claims.

Cirves also moves to compel Sukowaty and Syed to produce documents related to the jail's policies on prescribing controlled substances. Dkt. 89. Defendants did not respond to the

motion. That information could be relevant to Cirves's claims, and Sukowaty and Syed didn't oppose the motion, so I will grant it.

UNDISPUTED FACTS

I begin with a brief discussion of three issues related to Cirves's summary judgment submissions. First, defendants contend that I cannot consider Cirves's exhibits because she did not authenticate them with a supporting affidavit. But following the 2010 amendment to Federal Rule of Civil Procedure 56, "evidence submitted in support of or opposition to summary judgment need not be authenticated. The court may consider unauthenticated materials unless a party or the court raises a question about whether it can be authenticated at trial." 11 Moore's Federal Practice § 56.92 (2022). Defendants don't identify any documents they contend are not authentic or explain why they believe Cirves's exhibits could not be authenticated at trial. Indeed, many of Cirves's exhibits are copies of the same jail medical records that defendants rely on. There are other problems with some of Cirves's evidence that I will discuss below. But I will not disregard her evidence because of a lack of a supporting affidavit.

Second, defendants ask me to deem their proposed facts as undisputed because Cirves's responses do not comply with the court's summary judgment procedures. Many of Cirves's responses are long and include additional information that is not directly responsive to the proposed facts. But because Cirves appears pro se, I am willing to give her some leeway in her responses. I will accept a proposed fact as true where neither side disputes it, and where the proponent cites to admissible evidence in support of the fact, and the other side offers no evidence in response.

Third, although Cirves submitted a set of proposed findings of fact, Cirves provides a clearer account of the events of this case in some of her other submissions, namely in her verified complaint, her briefs, and her responses to defendants' proposed findings of fact. Because Cirves is pro se and swears that the contents of those submissions are true under penalty of perjury, I will accept the factual contents of those submissions as true where they relate to matters within her personal knowledge.

With those preliminaries in mind, the following facts are undisputed, except where noted.

Cirves suffers from palatal myoclonus, which causes her soft palate to involuntarily spasm. The jerky movements of the soft palate create a loud, rhythmic clicking noise in Cirves's ear. The parties refer to this clicking as a type of tinnitus. The condition also makes it difficult for Cirves to swallow. Since 2008, Cirves has treated her condition by taking clonazepam, a benzodiazepine, which reduces the spasms. Clonazepam is a Schedule IV controlled substance. Cirves had previously been allowed to take clonazepam for her condition at the Dane County Jail when she was incarcerated there in 2008. *See* Dkt. 57-7, at 7. In January 2019, Cirves received a renewed prescription for clonazepam that was valid through July of that year. *See* Dkt. 57-9, at 2.

The events in this case took place during Cirves's pretrial detention at the Dane County Jail beginning in February 2019. During Cirves's intake search, staff discovered that she had placed around 20-30 clonazepam pills in her mouth. Staff wrested Cirves to the floor and attempted to remove the pills from her mouth. Cirves was immediately transported to the hospital for a suspected overdose. She was medically cleared and returned to the jail later that day.

The next day, Cirves had a medical intake appointment with a jail nurse. Cirves told the nurse that she tried to smuggle clonazepam into the jail to ensure that she could continue to take it while she was incarcerated. Cirves said that she was experiencing benzodiazepine withdrawal and asked the nurse to prescribe her clonazepam. The nurse told Cirves that she could not have clonazepam unless it was prescribed by a jail physician. The nurse wrote that she would speak to a doctor about Librium. Dkt. 80-1, at 7. Cirves's filings suggest that Librium is a medicine used to help people taper off benzodiazepines. *See* Dkt. 94, at 2. Cirves never received a taper and stopped taking clonazepam "cold turkey."

Cirves promptly filed a health service request to be seen by a doctor. At the end of February, Cirves met with defendant Dr. Laura Sukowaty, a jail physician. Cirves told Sukowaty about her condition and said that she had been given clonazepam the last time she was held in the jail. Sukowaty told Cirves that "controlled substances are not given in jail" and that she "would not be giving [Cirves] clonazepam for any reason." Dkt. 57-7, at 5.

In March, Cirves asked to be seen by a doctor for a rash. Cirves met with Sukowaty. Sukowaty's notes from that visit address only Cirves's rashes. But Cirves says that's because Sukowaty refused to discuss Cirves's palatal myoclonus, and that Sukowaty repeatedly told Cirves that the visit was for her rash only. Dkt. 94, at 24–25.

Soon after, defendant Dr. Salam Syed replaced Sukowaty as the jail's doctor. Over the following months, Cirves met with Syed nine times to address some of Cirves's other medical needs. The parties dispute whether Cirves mentioned her palatal myoclonus, tinnitus, or her desire for clonazepam during these appointments. In his treatment notes from those visits, Syed mentions a request for clonazepam only once, from a visit near the end of July 2019. Dkt. 80-1, at 36. Most of his notes report that there were "no other issues" for Cirves.

*See* Dkt. 80-1, at 8, 9 ("stating otherwise I'm okay"), 23, 24, 26 ("otherwise feeling ok"), 34. Cirves says that she asked for clonazepam and complained about her condition at nearly every appointment, and that like Dr. Sukowaty, Syed told Cirves that he would only discuss the specific medical issue that the appointment was for. In her verified complaint, Cirves alleges that she asked Syed for clonazepam on at least five occasions. *See* Dkt. 19, at 3.

The parties don't dispute that Cirves asked Syed for clonazepam during their appointment in July. Cirves says that in that appointment, she asked Syed if he thought she was just trying to get high and Syed said that he did. Dkt. 94, at 46.

Throughout her time at the jail, Cirves continued to submit health services requests for clonazepam, *see* Dkt. 57-3, at 10, 27, and asked for the medication during visits with other members of jail medical staff. *See id.* at 12, 19, 23. In November 2019, Cirves submitted a health service request stating that she was still suffering from tinnitus and that the jail had not given her any alternative medication for her condition. *Id.* at 38.

Cirves says that when she was incarcerated, her palatal myoclonus caused her to have numerous choking and coughing episodes when she ate or drank. Dkt. 57, at 23. The clicking also caused her to lose sleep and caused her significant stress. Dkt. 94, at 6. As for her withdrawal symptoms, Cirves says that she did not experience pain or vomiting, but that her anxiety increased and that she suffered "dizziness, involuntary muscle jerking, and heart palpitations." *Id*. at 3. It's unclear how long Cirves's withdrawal symptoms lasted. In an April 2019 appointment with health services, about two months into her detention, Cirves denied having any significant withdrawal concerns. Dkt. 57-3, at 6.

ANALYSIS

**A. Summary judgment motions**

Cirves contends that Sukowaty and Syed violated her constitutional rights by not prescribing her clonazepam. As a preliminary matter, defendants contend that the court allowed Cirves to proceed only on a claim that they "refused to assess Cirves's symptoms or contact her other medical providers about her clonazepam prescription." Dkt. 66, at 8 (quoting Dkt. 20, at 4). Defendants construe the court's screening order too narrowly. I concluded that those allegations stated claims against Sukowaty and Syed, but I didn't expressly limit Cirves's claims to those specific allegations. *See* Dkt. 20, at 4. At bottom, Cirves's claim is that she did not receive adequate treatment for her condition. And to assess whether Cirves's treatment was adequate, I must consider the totality of the circumstances surrounding the defendants' care decisions. *See McCann v. Ogle Cty.*, 909 F.3d 881, 886 (7th Cir. 2018).

Because Cirves was a pretrial detainee during the time relevant to this case, her claim is governed by the Fourteenth Amendment. *See Miranda v. County of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). It is unclear what standard applies to Fourteenth Amendment medical care claims; the court of appeals has applied different tests without discussing whether the tests are distinct. *Compare Williams v. Ortiz,* 937 F.3d 936, 942 (7th Cir. 2019) (three-element test), *with Gonzalez v. McHenry Cty.,* 40 F.4th 824, 828 (7th Cir. 2022) (four-element test). But the court recently provided a clear formulation of the standard governing Fourteenth Amendment failure-to-protect claims in *Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022), and that test can be easily adjusted to apply to the medical care context. With that in mind, I conclude that to succeed on a Fourteenth Amendment claim of inadequate medical care, a plaintiff must show that (1) she had a serious medical need, *Williams v. Ortiz*, 937 F.3d 936, 942 (7th Cir.

2019);[1] (2) defendants made an intentional decision regarding her medical care; (3) defendants' actions were objectively unreasonable; and (4) defendants' actions caused her harm, *see Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022); *McCann,* 909 F.3d at 886.

Summary judgment is proper if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, the court evaluates each motion separately, construing the facts and drawing all reasonable inferences from those facts in favor of the nonmoving party. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008).

1. **Objectively serious medical condition**

An objectively serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). "[Not] every ache and pain or medically recognized condition involving some discomfort" is a serious medical need. *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997). But a condition does not have to be life threatening to be serious. *Gayton*, 593 F.3d 610. A medical need may be

---

[1] As Judge Ripple observed in his dissent in *Jump v. Vill. of Shorewood,* the requirement that a medical condition must be objectively serious to support a Fourteenth Amendment claim is in tension with the court of appeals' position that "whether a medical need is serious . . . is just a threshold requirement before the state has a duty under the Eighth Amendment to provide medical care to a prisoner." 42 F.4th 782, 796, n.4 (7th Cir. 2022) (Ripple, J., dissenting) (quoting *Pulera v. Sarzant*, 966 F.3d 540, 550 (7th Cir. 2020)). Under the Fourth Amendment standard—which the court of appeals has treated as functionally identical to the Fourteenth's—the seriousness of the medical need is merely a factor in assessing the reasonableness of the defendant's treatment. *See Pulera*, 966 F.3d at 550, 552. But the court has never expressly stated that a non-serious condition can support a Fourteenth Amendment claim. The parties assume that Cirves's condition must be objectively serious to prevail on her claim, and the court will do the same.

serious if it "significantly affects an individual's daily activities" or causes substantial pain. *Hayes v. Snyder*, 546 F.3d 516, 523 (7th Cir. 2008).

Cirves identifies two medical conditions that she contends are objectively serious: (1) her palatal myoclonus and (2) her withdrawal from clonazepam. Whether Cirves's palatal myoclonus was serious turns on disputed facts about the severity of her symptoms. Defendants say that Cirves experienced only tinnitus and some dizziness. Courts are divided on whether tinnitus is a serious medical need. *Compare McDowell v. Talbot,* No. 11-cv-2230, 2012 WL 6004220, at *4 (C.D. Ill. Nov. 30, 2012) ("garden-variety" tinnitus, without more, is unlikely to constitute a serious medical need), *with Houser v. Folino,* No. 10-0416, 2014 U.S. Dist. LEXIS 101095, at *24 (W.D. Pa. June 24, 2014) (tinnitus was a serious medical need where chronic ear ringing caused pain, discomfort, and mental stress). And in some cases, the court of appeals has concluded that occasional dizziness is not a serious medical need. *See Oliver v. Deen*, 77 F.3d 156 (7th Cir. 1996); *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999).

But viewing the facts in the light most favorable to Cirves, a jury could reasonably conclude that her myoclonus was serious enough to require treatment by a doctor. Cirves says that she was frequently so dizzy that she thought she would fall over, and that the constant clicking prevented her from sleeping. And she says that the jerky motions of her soft palate made it difficult for her to eat or drink. If a jury chose to credit Cirves's testimony about the severity of her condition, it could conclude that it significantly affected her daily activities and required medical attention.

But Cirves's withdrawal symptoms are a different matter. Even looking at the facts in the light most favorable to Cirves, she has not shown that her withdrawal was a serious medical need. Withdrawal may be a serious medical need if it manifests serious symptoms such as

seizures, *King v. Kramer*, 680 F.3d 1013, 1017 (7th Cir. 2012), pain, *Treadwell v. McHenry Cty.*, 193 F. Supp. 3d 900, 905 (N.D. Ill. 2016) or severe mental distress, *Foelker v. Outagamie Cty.*, 394 F.3d 510, 512 (7th Cir. 2005) (withdrawal caused disoriented inmate to defecate in his cell and on himself). Cirves didn't experience any of those symptoms. She says that clonazepam withdrawal increased her dizziness, exacerbated her anxiety, and caused her to have involuntary muscle twitches. But nothing indicates that her anxiety or muscle twitches were severe, and she doesn't explain how her dizziness from her withdrawal is distinct from the dizziness from her palatal myoclonus. More important, unlike her myoclonus, it appears that Cirves's withdrawal symptoms did not last the entire length of her detention. Cirves reported that she did not have significant withdrawal concerns by April 2019, around two months after she arrived at the jail.

Cirves argues that her withdrawal was a serious medical need for two reasons. First, she says that her withdrawal worsened her "SVT" or "Supraventricular tachycardia," which causes her heart to beat irregularly fast. Cirves did go to the hospital in April after experiencing heart palpitations. But Cirves doesn't present any admissible evidence to show that those palpitations were caused by her withdrawal. *Accord Upthegrove v. Health Professionals, Ltd.,* No. 07-cv-596-bbc, 2009 WL 2244723, at *6 (W.D. Wis. July 24, 2009) ("Apart from his own subjective belief, plaintiff has offered no verifying medical evidence that these symptoms were a result of not having clonazepam rather than the result of some other condition."). The doctor who saw Cirves for her heart problems stated that palpitations were a "recurrent" problem for Cirves, and he didn't say that her recent palpitations were caused by withdrawal. *See* Dkt. 57-20, at 11. To the contrary, the doctor noted that Cirves was not in acute withdrawal at that time. *Id.* There is nothing in the record to show that the heart palpitations were caused by clonazepam withdrawal.

9

Second, Cirves says that stopping clonazepam cold turkey could cause seizures and death. Cirves supports that assertion by citing some websites and articles that discuss benzodiazepine withdrawal. *See* Dkts. 57-4, 57-19. But even if withdrawal from clonazepam could be dangerous as a general matter, it's undisputed that Cirves didn't experience those types of harms. Cirves has no evidence that her withdrawal significantly affected her daily activities or caused her to suffer pain.

Of the two conditions Cirves identified, only her palatal myoclonus might have been a serious medical need. Because the parties dispute the severity of her symptoms, defendants are not entitled to summary judgment on the ground that her palatal myoclonus was not serious.

### 2. Intentional conduct

Under the Fourteenth Amendment, a plaintiff must show that defendants made an intentional decision regarding plaintiff's medical care. *Thomas*, 39 F.4th at 841; *McCann*, 909 F.3d at 886. A defendant is liable only if their actions were deliberate. *See Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015); *Miranda,* 900 F.3d at 354. Actions made by mistake do not violate the Fourteenth Amendment. For example, a taser that went off by accident cannot support an excessive force claim, *Kingsley*, 576 U.S at 396, and a plaintiff cannot bring a medical care claim against a nurse who mistakenly mixed up the plaintiff's chart with another detainee's, *Miranda*, 900 F.3d at 354.

Here, there is no dispute that defendants' actions were deliberate: they made the intentional decision not to prescribe Cirves clonazepam. Nothing in the record suggests that Cirves was denied clonazepam by mistake. Instead, the parties agree that the care Cirves received was a result of the defendants' care decisions. Cirves's claim turns on whether those intentional decisions were objectively reasonable.

### 3. Objective reasonableness

To prevail on her claim, Cirves must show that defendants' treatment decisions were objectively unreasonable. In assessing whether a defendant's response was reasonable, I must consider the totality of facts and circumstances surrounding the defendant's care decision. *McCann,* 909 F.3d at 886. Cirves must show that "a reasonable [doctor] in the [defendants'] circumstances would have appreciated the high degree of risk" that she was facing as a result of her condition. *See Thomas,* 39 F.4th at 841. The defendant's actual state of mind is irrelevant under the Fourteenth Amendment standard.

Here, the question of whether defendants' response to Cirves's condition was reasonable turns on disputed facts that cannot be resolved at summary judgment. The defendants' decision not to prescribe Cirves clonazepam, standing alone, would likely not violate the Constitution, because pretrial detainees are not entitled to their preferred course of treatment. *See Williams v. Ortiz*, 937 F.3d 936, 944 (7th Cir. 2019) (disagreement with a doctor's treatment is not sufficient to prevail on a Fourteenth Amendment claim). And a jail doctor does not need to continue a patient's medication as long as they use their medical judgment to arrange some sort of alternative treatment. *Cf. King v. Kramer,* 680 F.3d 1013, 1021 (7th Cir. 2012) ("a municipality would violate the Eighth Amendment . . . if it had a policy requiring jail staff to throw away all prescription medications without implementing an appropriate mechanism for providing alternative treatment."). But here, defendants have not identified *any* care they provided for Cirves's palatal myoclonus. Both Sukowaty and Syed recorded in their notes that Cirves asked for clonazepam, *see* Dkt. 80-1 at 4, 36, and that they declined to prescribe it for her. But there is no indication that they gave her alternative medication, and Cirves says that she never received any alternative treatment for her condition during her stay at the jail.

Whether that was reasonable depends on the information available to defendants about Cirves's condition, which is in dispute. Cirves says that she told Sukowaty all of the symptoms of her palatal myoclonus, and said that the condition has caused her "so much mental grief" that she had attempted to take her own life in the past. Dkt. 94, at 18. And Cirves says that she repeatedly attempted to discuss her palatal myoclonus with Syed but was rebuffed each time. Defendants contend that Cirves's statements do not create a genuine dispute of fact because they conflict with the defendants' treatment notes: Sukowaty's appointment notes report that Cirves's only tinnitus symptoms were dizziness and trouble sleeping, and nearly all of Syed's appointment notes mention that Cirves had "no other issues" to report beyond the separate medical issue the appointment was scheduled for.

But testimony from Cirves about what she told the doctors would be admissible evidence on that issue. This is not a situation where Cirves's testimony is so blatantly contradicted by evidence in the record that no reasonable jury would believe her. *Cf. Scott v. Harris*, 550 U.S. 372, 380 (2007) (court should have disregarded testimony that conflicted with video evidence). The doctor's notes are not inherently more authoritative than Cirves's recollection. And in light of Cirves's frequent health service requests related to her palatal myoclonus and her clonazepam, a jury could reasonably believe that she told the doctors more about her condition than the treatment notes reflect. The court cannot step into the jury's shoes and assess the parties' credibility.

If defendants knew that Cirves's palatal myoclonus was significantly interfering with her daily activities, it may have been unreasonable for them not to prescribe any alternative treatment to Cirves. Because key facts about that issue are in dispute, neither side is entitled to summary judgment.

12

### 4. Harm

Cirves must show that the defendants' actions caused her harm. *Thomas*, 39 F.4th 835. This element isn't meaningfully disputed, and Cirves's statements that she suffered from anxiety, sleep deprivation, and dizziness as a result of her untreated palatal myoclonus would allow a reasonable jury to conclude that she suffered harm as a result of defendants' treatment decisions.

But other elements of Cirves's claim turn on disputed facts that will need to be resolved at trial. I will shortly issue a trial preparation order that will explain the steps Cirves must take in advance of the December 5, 2022 trial date.

## B. Motion to compel

Cirves moves to compel defendants to produce documents from Wellpath, the medical contracting company that employed Sukowaty and Syed, related to Wellpath's policies on prescribing controlled substances. Dkt. 89.[2] Cirves says that she needs these documents to determine whether the jail did, in fact, have a blanket policy against prescribing controlled substances like clonazepam. Sukowaty and Syed did not respond to the motion to compel.

When deciding whether to grant a motion to compel discovery, the court must consider whether the requested discovery is relevant, "proportional to the needs of the case," and nonprivileged. Fed. R. Civ. P. 26(b)(1). In her motion, Cirves avers that she asked Sukowaty in an interrogatory what the Wellpath policy on prescribing scheduled substances is. In response, Sukowaty responded that she no longer works for Wellpath and does not have access

---

[2] Cirves identifies some other evidence she seeks to compel defendants to produce; specifically, her jail medical records from when she was incarcerated in the jail in 2015. Dkt. 89, at 2. But she doesn't address that evidence in her brief in support of her motion, Dkt. 106, so I'll deny her motion as to that evidence.

to those policies. *See* Dkt. 106, at 8. Cirves also says that she followed up on her discovery request by emailing defendants' counsel.

Although pretrial detainees are not entitled to their preferred course of treatment, a jail-wide (or company-wide) policy about prescribing controlled substances has at least some relevance to whether defendants' treatment decisions were ultimately reasonable. And Sukowaty's response to Cirves's interrogatory does not meaningfully answer Cirves's question. So I will grant Cirves's motion in part. *See* Fed. R. Civ. P. 26(b)(c)(1)(C) (court can "prescrib[e] a discovery method other than the one selected by the party seeking discovery.") Defendants are directed to respond to Cirves's interrogatory explaining, to the best of their knowledge and based on reasonably available information, what policies were in place regarding prescribing controlled substances.

ORDER

IT IS ORDERED that:

1. Plaintiff Elizabeth Cirves's motion for summary judgment, Dkt. 57, is DENIED.

2. Defendants Salam Syed and Laura Sukowaty's motion for summary judgment, Dkt. 77, is DENIED.

3. Plaintiff's motion to dismiss defendant Lurquin, Dkt. 98, is GRANTED. Lurquin is DISMISSED from the case.

4. Defendant Lurquin's motion for summary judgment, Dkt. 68, is DENIED as moot.

5. Plaintiff's motion to compel, Dkt. 89, is GRANTED. Defendants may have until October 27, 2022, to respond to Cirves's discovery requests consistent with this opinion.

Entered October 12, 2022.

                                      BY THE COURT:

                                      /s/

                                      _____
                                      JAMES D. PETERSON
                                      District Judge